IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CV-338-FL

| | |
|---|---|
| MATTHEW WILLIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Matthew Willis ("Plaintiff") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability and disability insurance benefits. The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [DE-23] be denied, Defendant's Motion for Judgment on the Pleadings [DE-25] be granted, and the agency's final decision be upheld.

## STATEMENT OF THE CASE

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on October 21, 2010. (Tr. 69.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (Tr. 69, 83.) On April 4, 2012, a hearing was held before Administrative Law Judge Robert Rideout ("ALJ") (Tr. 26), who issued an unfavorable ruling on May 9, 2012 (Tr. 12-20). Plaintiff's request for review by the Appeals

Council was denied March 25, 2013, making the ALJ's decision the final decision of the Commissioner. (Tr. 1.) Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "'In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner].'" *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or

2

equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past relevant work; and, if not, (5) based on the claimant's age, work experience and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 74 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*.

## FACTUAL HISTORY

**I.     ALJ's Findings**

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff has not engaged in substantial gainful employment since November 1, 2009, the date of alleged disability. (Tr. 14.) Next, the ALJ determined Plaintiff has the following severe impairments: curvature of the spine and degenerative disc disease. (*Id.*) However, at step three, the ALJ concluded Plaintiff's impairments were not severe enough to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"), and found that Plaintiff has the ability to perform light work with additional postural and environmental restrictions. (*Id.*) The ALJ stated the following limitations:

> During the period from November 1, 2009 through December 31, 2011, the claimant could lift/carry and push/pull 20 pounds occasionally and 10 pounds frequently. He could sit, stand, and walk up to six hours each in an eight-hour workday. He required a work environment that would permit him to stand up at a workstation to stretch for one to two minutes every half hour (i.e. a "sit/stand

option"). He could occasionally perform such postural activities as climbing ladders, ropes, scaffolds, stairs, and ramps, balancing, stooping, kneeling, crouching, and crawling. He was not able to perform tasks requiring any exposure to unprotected heights or moving mechanical parts.

(Tr. 15.) In making this assessment, the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms not fully credible. (Tr. 17.) At step four, the ALJ concluded Plaintiff had the RFC to perform the requirements of his past relevant work as a CAD drafter and computer systems analyst. (Tr. 19.)

## II. Plaintiff's Testimony

At the time of Plaintiff's administrative hearing, Plaintiff was 30 years old, had obtained a high school diploma and attended a vocational school, and was unemployed. (Tr. 31, 34.) Plaintiff testified that he is 5'9" and weighs approximately 190 pounds. (Tr. 31.) He recently gained weight due to physical inactivity, and he has lost about an inch of height since the age of sixteen due to the curvature of his spine. (Tr. 31, 39-40.) Plaintiff was last employed as a CAD technician and IT Administrator for a civil engineering firm, where his duties included data entry and maintaining technology for the company. (Tr. 34.) Plaintiff's past experience also includes working as a cashier for Wal-Mart. (Tr. 37.)

Plaintiff was diagnosed with scoliosis when he was three or four years old. (Tr. 40.) He wore a back brace at night until the age of fourteen. (*Id.*) At age sixteen, Plaintiff had surgery in which he underwent a spinal fusion and had a rod placed in his back to help straighten his spine. (Tr. 41.) The surgery was not successful. (*Id.*) Within six months, the rod had broken, and the fusion did not hold. (*Id.*) Plaintiff did not visit another doctor until approximately twelve years later, when he saw Dr. Lloyd Hey to address back pain. (Tr. 42.) Plaintiff told Dr. Hey his pain was a 2 out of 10. (Tr. 43.) He reported that it was actually higher, and he had lied to Dr. Hey

4

about his pain level because he is afraid of doctors. (*Id.*) Dr. Hey x-rayed Plaintiff's spine and found two additional breaks in the hardware. (Tr. 42.) Dr. Hey explained that surgery at this time would be very risky and the benefits would be limited. (*Id.*) Plaintiff had been walking for exercise but became scared after seeing the x-rays and stopped. (Tr. 44.)

Plaintiff asserts that he cannot work because he has constant back pain. (Tr. 38.) Plaintiff takes only over-the-counter medication for his pain, and he has never received steroid injections to help manage pain. (Tr. 48.) However, Plaintiff reports that over-the-counter medication does not alleviate his pain. (Id.) Plaintiff has been unable to enroll in physical therapy because of his limited finances. (Tr. 45.)

Plaintiff lives with his 78-year-old father and his father's 88-year-old "common-law wife." (Tr. 33.) Plaintiff reported limited activities during the day which include sitting at his computer, watching television, and running errands. (Tr. 44-45.) When watching television, Plaintiff lies on a couch with special padding, and when he is at his computer, he uses an exercise ball as a chair. (*Id.*) Plaintiff stated that he was previously caring for his father and his father's partner, but he was doing "much less work" because his brother had come to live with them. (Tr. 46.) Plaintiff explained that he has difficulty performing housework because of his back pain. (*Id.*) Plaintiff vacuums and washes dishes, but he can do so for only approximately ten minutes at a time. (*Id.*)

Plaintiff reported that it takes a while for him to fall asleep, but when he does, he sleeps well. (Tr. 47.) In the morning, it takes Plaintiff time to get out of bed. (*Id.*) Plaintiff stated that he spends a total of three hours a day in bed because he has to lie down to alleviate his back pain. (Tr. 48.) When lying down, Plaintiff uses three body pillows to maintain a comfortable position. (Tr. 38-39.)

5

### III. Vocational Expert's Testimony

Julie Sawyer-Little testified as a VE at the administrative hearing. (R. 51-55.) After the VE's testimony regarding Platiniff's past work experience (Tr. 52-53), the ALJ posed the following hypothetical question:

> If you would, assume a hypothetical individual with the same age, education, and past relevant work experience as the claimant, who has the following residual functional capacity. That they could perform the full range of light work with the following limitations. That they would require a sit-stand option. As the DOT does not address the sit-stand option, I therefore define the option as allowing the claimant to stand up at their workstation and stretch for one to two minutes every half hour. That he would be able to occasionally climb ramps and stairs, ladders, ropes, and scaffolds, balance, stoop, kneel, crouch, crawl. That he could have no exposure to unprotected heights and moving mechanical parts. Could this hypothetical individual perform any of the past work that you have described?

(R. 53-54.) The VE responded that such a claimant could return to Plaintiff's prior relevant work categorized as sedentary, addressing Plaintiff's work as a CAD drafter and computer system analyst. (*Id.*) The ALJ then asked a second hypothetical:

> If you would assume a hypothetical individual with the same age, education, and past relevant work experience as the claimant who has the following residual functional capacity. And he has all of the limitations that we have mentioned in hypothetical number one. But now, because of the level and severity of the pain that he is suffering, he would require work which would allow him to lay down 25 percent of the time as his pain dictated. Would there be any position within the region or national economy that would accommodate such a restriction?

(Tr. 54-55.) The VE responded in the negative. (Tr. 55.)

### DISCUSSION

Plaintiff's sole contention is that the ALJ improperly evaluated the medical record and Plaintiff's allegations of pain when assessing Plaintiff's ability to sustain work activity. The undersigned disagrees.

6

## I. Plaintiff's Credibility

"Subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 591. Objective evidence of the pain is not required; however, the ALJ need not accept allegations of pain "to the extent they are inconsistent with the available evidence of the underlying impairment." *Id.* The two-step process for evaluating symptoms requires the adjudicator: (1) to "consider whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the individual's pain or other symptoms" and (2) to "evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). In order to evaluate a claimant's allegations of pain when those allegations are not substantiated by the medical record, the adjudicator must make a finding of the claimant's credibility. *Id.*

Here, the ALJ properly applied the two-step procedure in evaluating Plaintiff's allegations of pain. The ALJ determined that there was objective medical evidence of a medically determinable physical impairment that could reasonably cause Plaintiff's pain. (Tr. 17.) The ALJ noted that Plaintiff was diagnosed with scoliosis, fractures in hardware inserted into Plaintiff's spine, degenerative disc disease, and foraminal narrowing. (Tr. 17-18.) However, the ALJ addressed the inconsistencies between Plaintiff's statements of pain and Plaintiff's previous statements concerning his activity level and the medical evidence, stating:

> The claimant has well-documented scoliosis but he was able to work with his condition and it has not become progressive. He has only slight limitation of motion. He has not developed any respiratory problems related to his chest wall
7

> deformity. He has no impairment in his ability to walk or to perform heel/toe walk and tandem walk maneuvers. He has no neurological deficits related to his condition. The claimant's degenerative disc disease is mild.[1] The x-rays and CT of the spine do not reveal any signs of spinal cord compression. His physical examinations have revealed that he has no neurological deficits indicative of nerve root compression.
>
> It is noted that the claimant has been able to care for his father and the father's ex-wife, both of whom are elderly. He has been their primary caregiver during their recuperation from surgery. Dr. Fernandez noted that the claimant was able to perform normal activities of daily living including walking up to ½ mile and lifting up to 20 pounds. It is also noted that the claimant has not had any ongoing medical treatment for his orthopedic conditions. Dr. Hey observed that the claimant was "not working by choice". The claimant has not required such aggressive measure for symptom relief as use of steroid medication, epidural injections, application of TENS equipment, or enrollment in physical therapy or a pain management program. The treatment regimen, therefore, indicates that the claimant's symptoms are not as intractable as alleged.

(Tr. 17-18 (footnote added).) The ALJ additionally noted that Dr. Hey recommended that Plaintiff contact the Division of Vocational Rehabilitation. (Tr. 17, 298.) The ALJ thus sufficiently explained the medical evidence and Plaintiff's statements that contradicted Plaintiff's allegations of severe pain. Substantial evidence supports the ALJ's findings; and, therefore, he did not err in finding Plaintiff's statements concerning such pain not fully credible.

## II. Medical Evidence

Plaintiff further alleges that the ALJ improperly evaluated the medical evidence, arguing that the ALJ stated that Plaintiff has mild degenerative disc disease, when Dr. Hey had diagnosed Plaintiff with severe degenerative disc disease. (Tr. 277.) The undersigned agrees with Plaintiff that the medical records indicate "severe" degenerative disc disease. (*Id.*) However, the ALJ's error was harmless. *See Morgan v. Barnhart*, 142 F. App'x 716, 729 (4th Cir. 2005) (recognizing the harmless error doctrine within the social security context). The ALJ explained Plaintiff's

---

[1] As set forth below, Plaintiff's treating physician, Dr. Hey, stated that Plaintiff had "*severe* degenerative disc disease." (Tr. 277 (emphasis added).)

medical records in detail, as well as examined Plaintiff's statements concerning his abilities and allegations of pain. Looking at the record as a whole, the ALJ determined Plaintiff had the severe impairments of curvature of the spine and degenerative disc disease. Nevertheless, the ALJ determined, given inconsistencies between claimant's statements and the medical record, that Plaintiff was capable of performing light work with postural and environmental limitations. There is no reasonable probability that the ALJ's mischaracterization of Plaintiff's condition as mild had any impact on the ALJ's decision finding Plaintiff not disabled. Thus, the error was harmless, and the decision of the Commissioner should be affirmed.

## CONCLUSION

For the reasons stated above, the undersigned RECOMMENDS that Plaintiff's Motion for Judgment on the Pleadings [DE-23] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-25] be GRANTED and the final decision of the Commissioner be AFFIRMED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have fourteen (14) days from the date of service to file written objections. Failure to file timely, written objections shall bar an aggrieved party from receiving de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 5th day of May 2014.

_____
KIMBERLY A. SWANK
United States Magistrate Judge